IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GREGORY THOMPSON, KEVIN BUCK, | § | |
| AND CHRISTOPHER DEAVER, On Behalf of | § | |
| Themselves and All Others Similarly Situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 2:15-cv-00526 |
| V. | § | |
| | § | JURY TRIAL DEMANDED |
| NOMAC DRILLING, LLC | § | |
| | § | CLASS ACTION |
| Defendant. | § | |
| | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, GREGORY THOMPSON ("Thompson"), KEVIN BUCK ("Buck") and CHRISTOPHER DEAVER ("Deaver") (collectively "Plaintiffs"), on behalf of themselves and all other similarly situated affected employees, file this Complaint against NOMAC DRILLING, LLC ("Nomac" or "Defendant"), showing in support as follows:

## I.    NATURE OF THE CASE

1.    This is a civil action brought by Plaintiffs pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 *et seq.*, (the "WARN Act") for Defendant's failure to give the required WARN Act written notice to Plaintiffs and similarly situated individuals (the "Class Members") in connection with recent Mass Layoffs and/or Plant Closings at Defendant's Marshall, Texas, El Reno, Oklahoma and Mount Morris, Pennsylvania sites of employment/operational units within those sites of employment at/from/through which Plaintiffs and Class Members were employed during the relevant time period.

2.      Accordingly, Defendant is liable under the WARN Act for failing to provide Plaintiffs and the Class Members written notice, including 60 days' advance written notice, as required by the WARN Act.

## II.      THE PARTIES, JURISDICTION AND VENUE

### A.      Plaintiff Gregory Thompson

3.      Thompson is a natural person who resides in Gregg County, Tennessee. He has standing to file this lawsuit.

4.      Thompson was employed by Defendant as an hourly paid oilfield worker where he worked for Defendant on drilling rigs in and around the oilfields of East Texas, including significant work on Defendant's drilling rigs in and around Marshall, Texas.

5.      Thompson's employment with Defendant was verbally terminated without any advance written warning on or about February 22, 2015. At all times relevant, Thompson was a full time employee of Defendant.

### B.      Plaintiff Kevin Buck

6.      Buck is a natural person who resides in Leflore County, Oklahoma. He has standing to file this lawsuit.

7.      Buck was employed by Defendant as an hourly paid oilfield worker where he worked for Defendant on drilling rigs in and around Oklahoma, including significant work on Defendant's drilling rigs in and around El Reno, Oklahoma.

8.      Buck's employment with Defendant was verbally terminated without any advance written warning on or about January 30, 2015. At all times relevant, Buck was a full time employee of Defendant.

C.    **Plaintiff Christopher Deaver**

9.    Deaver is a natural person who resides in Roane County, West Virginia. He has standing to file this lawsuit.

10.    Deaver was employed by Defendant as an hourly paid oilfield worker where he worked for Defendant on drilling rigs in and around the oilfields of Pennsylvania, including significant work on Defendant's drilling rigs in and around Mount Morris, Pennsylvania.

11.    Deaver's employment with Defendant was verbally terminated without any advance written warning on or about February 2, 2015. At all times relevant, Deaver was a full time employee of Defendant.

D.    **Class Members**

12.    There are three distinct classes/sub-classes in this lawsuit – the Marshall Class Members who are/were employees of Defendant at Defendant's single site of employment at Marshall, Texas; the El Reno Class Members who are/were employees of Defendant at Defendant's El Reno, Oklahoma single site of employment; and the Mount Morris Class Members who are/were employees of Defendant at Defendant's Mount Morris, Pennsylvania single site of employment. Collectively, the Marshall Class Members, the El Reno Class Members and the Mount Morris Class Members are referred to as the "Class Members."

1.    **Marshall Class Members**

13.    The Marshall Class Members are affected employees who are similarly situated to Thompson, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at Defendant's single site of employment in Marshall, Texas made the subject matter of this lawsuit in the 30 day or 90 day period from Thompson's employment loss.

14.     Alternatively, the Marshall Class Members are affected employees who are similarly situated to Thompson, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site of employment/operational units at/within that single site of employment in Marshall, Texas made the subject matter of this lawsuit in the 30 day or 90 day period from Thompson's employment loss.

15.     On information and belief, the single site of employment for purposes of the WARN Act is Defendant's place of business in Marshall, Texas.

16.     Alternatively, should discovery reveal that there is more than one single site of employment for Thompson and the Marshall Class Members, then Plaintiffs reserve the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

### 2.      El Reno Class Members

17.     The El Reno Class Members are affected employees who are similarly situated to Buck, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at Defendant's single site of employment in El Reno, Oklahoma made the subject matter of this lawsuit in the 30 day or 90 day period from Buck's employment loss.

18.     Alternatively, the El Reno Class Members are affected employees who are similarly situated to Buck, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site of employment/operational units at/within that single site of employment in El Reno, Oklahoma

made the subject matter of this lawsuit in the 30 day or 90 day period from Buck's employment loss.

19.     On information and belief, the single site of employment for purposes of the WARN Act is Defendant's principal place of business in El Reno, Oklahoma.

20.     Alternatively, should discovery reveal that there is more than one single site of employment for Buck and the El Reno Class Members, then Plaintiffs reserve the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

### 3.     Mount Morris Class Members

21.     The Mount Morris Class Members are affected employees who are similarly situated to Deaver, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at Defendant's single site of employment in Mount Morris, Pennsylvania made the subject matter of this lawsuit in the 30 day or 90 day period from Deaver's employment loss.

22.     Alternatively, the Mount Morris Class Members are affected employees who are similarly situated to Deaver, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site of employment/operational units at/within that single site of employment in Mount Morris, Pennsylvania made the subject matter of this lawsuit in the 30 day or 90 day period from Deaver's employment loss.

23.     On information and belief, the single site of employment for purposes of the WARN Act is Defendant's principal place of business in Mount Morris, Pennsylvania.

24.     Alternatively, should discovery reveal that there is more than one single site of employment for Deaver and the Mount Morris Class Members, then Plaintiffs reserve the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

E.     **Defendant Nomac Drilling, LLC**

25.     On information and belief, Defendant is a foreign limited liability company incorporated under the laws of the State of Oklahoma.

26.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

27.     On information and belief, during the time period relevant to this lawsuit, Defendant's principal place of business is and has been at 3400 South Radio Road, El Reno, Oklahoma 73036. Defendant identifies that address as its corporate office.

28.     Defendant may be served with summons through its registered agent, CT Corporation, 350 N. Saint Paul St., Suite 900, Dallas, Texas 75201.

F.     **Jurisdiction and Venue**

29.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

30.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

31.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims, and the claims of the Class Members, on federal law, namely 29 U.S.C. §§ 2101-2109.

32.     Venue is proper in the United States District Court for the Eastern District of Texas because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district. Further, at all relevant times, Defendant transacted business in this District and continues to transact business in this District. 29 U.S.C. § 2104(a)(5).

33.     Venue is proper in the Marshall Division of the United States District Court for the Eastern District of Texas because Defendant maintains business operations in the Marshall Division and a substantial part of the events giving rise to Plaintiffs' claims occurred in the Marshall Division.

### III.     FACTUAL BACKGROUND

34.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

35.     On information and belief, and at all times material to this action, Defendant has been a business enterprise that employs 100 or more employees, excluding part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given.

36.     Prior to the Mass Layoffs and/or Plant Closings that form the basis of this action, Defendant employed more than 100 employees, exclusive of part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given, at each of the sites of employment made the subject matter of this lawsuit.

### A.     Marshall, Texas

37.     During the time period before Thompson's employment loss, Defendant operated many drilling rigs connection with its drilling operations in and around East Texas, including

drilling rigs in and around Marshall, Texas. Each drilling rig consisted of multiple crews that worked various shifts. Such a typical drilling rig included, during a 14 day hitch or work crew rotation, two tool pushers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would typically be replaced by another crew of similar structure and number with the only remaining employees usually being the tool pushers. So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees, exclusive of support personnel such as mechanics, drivers, and administrative support.

38.     Alternatively, each such drilling rig constitutes/constituted an operational unit of the Marshall, Texas single site of employment made the subject matter of this lawsuit. Defendant operated multiple drilling rigs at/from/through the Marshall, Texas site of employment made the subject matter of this lawsuit 30 days and/or 90 days prior to Thompson's employment loss.

39.     Thompson worked with numerous other employees of Defendant. Those employees performed drilling operations/support of drilling operations for Defendant. Like Thompson, those workers are/were subject to Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

40.     Thompson was verbally notified by Defendant on or about February 22, 2015 that his employment with Defendant was terminated or that he otherwise was subject to an employment loss. Thompson was not discharged for cause, did not voluntarily resign, and did not retire.

41.     On and around the time of his verbal notification of employment loss, Thompson learned that numerous other similarly situated employees of Defendant suffered an employment loss. In fact, around the time of Thompson's employment loss, Defendant began the process of

"stacking rigs" whereby drilling rigs are removed from operational work and stored with their crews typically being terminated as employees or otherwise experiencing an employment loss. On information and belief, support personnel, such as mechanics, drivers, and/or administrative employees, also experienced employment losses in connection with the stacking of drilling rigs and employment losses of the drilling rig crews.

42.     On information and belief, the employment losses at the Marshall, Texas site of employment made the subject matter of this lawsuit occurred within a 30 day period of Thompson's employment loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Thompson's employment loss, such employment losses not being the result of separate and distinct actions and causes.

43.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the Marshall, Texas site of employment made the subject matter of this lawsuit experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the Marshall, Texas site of employment made the subject matter of this lawsuit had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

44.     The exact number of employees who experienced an employment loss at the Marshall, Texas site of employment made the basis of this lawsuit within a 30 day and 90 day period of Thompson's employment loss is information that is only known to Defendant.

Similarly, the exact number of employees employed at/from/through the Marshall, Texas site of employment is information that is currently known only to Defendant.

45.     Thompson and the Marshall Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

46.     Thompson and the Marshall Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

47.     Thompson and the Marshall Class Members were not provided with written notice, at any time prior to their termination, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

## B.     El Reno, Oklahoma

48.     During the time period before Buck's employment loss, Defendant operated many drilling rigs connection with its drilling operations in Oklahoma, including drilling rigs in and around El Reno, Oklahoma. Each drilling rig consisted of multiple crews that worked various shifts. Such a typical drilling rig included, during a 14 day hitch or work crew rotation, two tool pushers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would typically be replaced by another crew of similar structure and number with the

only remaining employees usually being the tool pushers. So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees, exclusive of support personnel such as mechanics, drivers, and administrative support.

49.     Alternatively, each such drilling rig constitutes/constituted an operational unit of the El Reno, Oklahoma site of employment made the subject matter of this lawsuit. Defendant operated multiple drilling rigs at/from/through the El Reno, Oklahoma site of employment made the subject matter of this lawsuit 30 days and/or 90 days prior to Buck's employment loss.

50.     Buck worked with numerous other employees of Defendant. Those employees performed drilling operations/support of drilling operations for Defendant. Like Buck, those workers are/were subject to Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

51.     Buck was verbally notified by Defendant on or about January 30, 2015 that his employment with Defendant was terminated or that he otherwise was subject to an employment loss. Buck was not discharged for cause, did not voluntarily resign, and did not retire.

52.     On and around the time of his verbal notification of employment loss, Buck learned that numerous other similarly situated employees of Defendant suffered an employment loss. In fact, around the time of Buck's employment loss, Defendant began the process of "stacking rigs" whereby drilling rigs are removed from operational work and stored with their crews typically being terminated as employees or otherwise experiencing an employment loss. On information and belief, support personnel, such as mechanics, drivers, and/or administrative employees, also experienced employment losses in connection with the stacking of drilling rigs and employment losses of the drilling rig crews.

53.     On information and belief, the employment losses at the El Reno, Oklahoma site of employment made the subject matter of this lawsuit occurred within a 30 day period of Buck's employment loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Buck's employment loss, such employment losses not being the result of separate and distinct actions and causes.

54.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the El Reno, Oklahoma site of employment made the subject matter of this lawsuit experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the El Reno, Oklahoma site of employment made the subject matter of this lawsuit had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

55.     The exact number of employees who experienced an employment loss at the El Reno, Oklahoma site of employment made the basis of this lawsuit within a 30 day and 90 day period of Buck's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the El Reno, Oklahoma site of employment is information that is currently known only to Defendant.

56.     Buck and the El Reno Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

57.     Buck and the El Reno Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

58.     Buck and the El Reno Class Members were not provided with written notice, at any time prior to their termination, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

### C.     Mount Morris, Pennsylvania

59.     During the time period before Deaver's employment loss, Defendant operated many drilling rigs connection with its drilling operations in Pennsylvania, including drilling rigs in and around Mount Morris, Pennsylvania. Each drilling rig consisted of multiple crews that worked various shifts. Such a typical drilling rig included, during a 14 day hitch or work crew rotation, two tool pushers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would typically be replaced by another crew of similar structure and number with the only remaining employees usually being the tool pushers. So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees, exclusive of support personnel such as mechanics, drivers, and administrative support.

60.     Alternatively, each such drilling rig constitutes/constituted an operational unit of the Mount Morris, Pennsylvania site of employment made the subject matter of this lawsuit. Defendant operated multiple drilling rigs at/from/through the Mount Morris, Pennsylvania site of employment made the subject matter of this lawsuit 30 days and/or 90 days prior to Deaver's employment loss.

61.     Deaver worked with numerous other employees of Defendant. Those employees performed drilling operations/support of drilling operations for Defendant. Like Deaver, those workers are/were subject to Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

62.     Deaver was verbally notified by Defendant on or about February 2, 2015 that his employment with Defendant was terminated or that he otherwise was subject to an employment loss. Deaver was not discharged for cause, did not voluntarily resign, and did not retire.

63.     On and around the time of his verbal notification of employment loss, Deaver learned that numerous other similarly situated employees of Defendant suffered an employment loss. In fact, around the time of Deaver's employment loss, Defendant began the process of "stacking rigs" whereby drilling rigs are removed from operational work and stored with their crews typically being terminated as employees or otherwise experiencing an employment loss. On information and belief, support personnel, such as mechanics, drivers, and/or administrative employees, also experienced employment losses in connection with the stacking of drilling rigs and employment losses of the drilling rig crews.

64.     On information and belief, the employment losses at the Mount Morris, Pennsylvania site of employment made the subject matter of this lawsuit occurred within a 30 day period of Deaver's employment loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Deaver's employment loss, such employment losses not being the result of separate and distinct actions and causes.

65.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the Mount Morris, Pennsylvania site of employment made the subject matter of this lawsuit experienced employment losses during the relevant time period.

On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the Mount Morris, Pennsylvania site of employment made the subject matter of this lawsuit had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

66.     The exact number of employees who experienced an employment loss at the Mount Morris, Pennsylvania site of employment made the basis of this lawsuit within a 30 day and 90 day period of Deaver's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the Mount Morris, Pennsylvania site of employment is information that is currently known only to Defendant.

67.     Deaver and the Mount Morris Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

68.     Deaver and the Mount Morris Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

69.     Deaver and the Mount Morris Class Members were not provided with written notice, at any time prior to their termination, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not

bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

## IV.   <u>WARN ACT CLAIMS</u>

70.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

71.    At all relevant times, Plaintiffs and the Class Members were "full-time employees" of Defendant as that term is used in the Warn Act.

72.    At all relevant times, Defendant was and is an employer under the WARN Act. 29 C.F.R. § 639.3(a).

73.    At material times, Defendant employed, and continues to employ, 100 or more employees, excluding part-time employees.

74.    On information and belief, Defendant's Marshall, Texas site constituted a single site of employment for Thompson and the Marshall Class Members. 29 C.F.R. § 639.3(i).

75.    Alternatively, each drilling rig operating at/from/through the Marshall site of employment made the subject matter of this lawsuit constitutes/constituted an operational unit within that single site of employment of Defendant. 29 C.F.R. § 639.3(j).

76.    On information and belief, Defendant's El Reno, Oklahoma site constituted a single site of employment for Buck and the El Reno Class Members. 29 C.F.R. § 639.3(i).

77.    Alternatively, each drilling rig operating at/from/through the El Reno, Oklahoma site of employment made the subject matter of this lawsuit constitutes/constituted an operational unit within that single site of employment of Defendant. 29 C.F.R. § 639.3(j).

78.     On information and belief, Defendant's Mount Morris, Pennsylvania site constituted a single site of employment for Deavers and the Mount Morris Class Members. 29 C.F.R. § 639.3(i).

79.     Alternatively, each drilling rig operating at/from/through the Mount Morris, Pennsylvania site of employment made the subject matter of this lawsuit constitutes/constituted an operational unit within that single site of employment of Defendant. 29 C.F.R. § 639.3(j).

80.     Plaintiffs maintain this action on behalf of themselves and on behalf of each other similarly situated employee.

81.     Each Marshall Class Member is similarly situated to Thompson with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

82.     Each El Reno Class Member is similarly situated to Buck with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

83.     Each Mount Morris Class Member is similarly situated to Deaver with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

A.     **Marshall Mass Layoff**

84.     During a 30 day or 90 day period from February 22, 2015, Defendant ordered/executed a "Mass Layoff" at the Marshall, Texas single site of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(i).

85.     Thompson and the Marshall Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

86.     On information and belief, 1/3 of the employees at the single site of employment made the subject matter of this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

87.     Thompson and the Marshall Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Thompson and the Marshall Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Marshall, Texas Mass Layoff made the subject matter of this lawsuit.

### B.     Marshall Plant Closing

88.     Pleading in the alternative, and on information and belief, with the number of drilling rigs stacked within 30 days or 90 days of February 22, 2015, Thompson and the Marshall Class Members suffered a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a)(ii). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 29 C.F.R. § 639.3(b). Accordingly, each drilling rig operating at/from/through the Marshall site of employment made the basis of this lawsuit was an operational unit of that single site of employment. 29 C.F.R. § 639.3(j).

89.     Thompson and the Marshall Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Marshall, Texas Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Thompson and the Marshall Class Members were

employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Marshall, Texas Plant Closing made the subject matter of this lawsuit.

### C.      No Written Notice of Marshall Mass Layoff and/or Plant Closing

90.      Thompson and the Marshall Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming termination of employment, Mass Layoff and/or Plant Closing.

91.      Thompson and the Marshall Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff and/or Plant Closing.

92.      Thompson and the Marshall Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

93.      On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the Marshall, Texas Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

*Plaintiffs' Original Complaint*                                                                                      19

94.     On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the termination of the employment loss of Thompson and the Marshall Class Members.

**D.     El Reno Mass Layoff**

95.     During a 30 day or 90 day period from January 30, 2015, Defendant ordered/executed a "Mass Layoff" at the El Reno, Oklahoma single site of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(i).

96.     Buck and the El Reno Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

97.     On information and belief, 1/3 of the employees at the single site of employment made the subject matter of this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

98.     Buck and the El Reno Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Buck and the El Reno Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's El Reno, Oklahoma Mass Layoff made the subject matter of this lawsuit.

**E.     El Reno Plant Closing**

99.     Pleading in the alternative, and on information and belief, with the number of drilling rigs stacked within 30 days or 90 days of January 30, 2015, Buck and the El Reno Class

Members suffered a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a)(i). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 29 C.F.R. § 639.3(b). Accordingly, each drilling rig operating at/from/through the El Reno site of employment made the basis of this lawsuit was an operational unit of that single site of employment. 29 C.F.R. § 639.3(j).

100.    Buck and the El Reno Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's El Reno, Oklahoma Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Buck and the El Reno Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's El Reno, Oklahoma Plant Closing made the subject matter of this lawsuit.

**F.      No Written Notice of El Reno Mass Layoff and/or Plant Closing**

101.    Buck and the El Reno Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming termination of employment, Mass Layoff and/or Plant Closing.

102.    Buck and the El Reno Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff and/or Plant Closing.

103.    Buck and the El Reno Class Members were not provided with any written notice by Defendant at the time of their termination of employment, Mass Layoff and/or Plant Closing.

104.     Buck and the El Reno Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;   (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

105.     On information and belief, Defendant did not notify the Oklahoma agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the El Reno, Oklahoma Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

106.     On information and belief, Defendant did not notify the Oklahoma agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the termination of the employment of Buck and the El Reno Class Members.

**G.     Mount Morris Mass Layoff**

107.     During a 30 day or 90 day  period from February 2, 2015, Defendant ordered/executed a "Mass Layoff" at the Mount Morris, Pennsylvania single site of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(i).

108.     Deaver and the Mount Morris Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

109.    On information and belief, 1/3 of the employees at the single site of employment made the subject matter of this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

110.    Deaver and the Mount Morris Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Deaver and the Mount Morris Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Mount Morris, Pennsylvania Mass Layoff made the subject matter of this lawsuit.

### H.    Mount Morris Plant Closing

111.    Pleading in the alternative, and on information and belief, with the number of drilling rigs stacked within 30 days or 90 days of February 2, 2015, Deaver and the Mount Morris Class Members suffered a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a)(i). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 29 C.F.R. § 639.3(b). Accordingly, each drilling rig operating at/from/through the single site of employment made the basis of this lawsuit was an operational unit of that single site of employment. 29 C.F.R. § 639.3(j).

112.    Deaver and the Mount Morris Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mount Morris, Pennsylvania Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Deaver and the Mount Morris Class

Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Mount Morris, Pennsylvania Plant Closing made the subject matter of this lawsuit.

## I.     No Written Notice of Mount Morris Mass Layoff and/or Plant Closing

113.    Deaver and the Mount Morris Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming termination of employment, Mass Layoff and/or Plant Closing.

114.    Deaver and the Mount Morris Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff and/or Plant Closing.

115.    Deaver and the Mount Morris Class Members were not provided with any written notice by Defendant at the time of their termination of employment, Mass Layoff and/or Plant Closing.

116.    Deaver and the Mount Morris Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

117.    On information and belief, Defendant did not notify the Pennsylvania agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a)

and 29 C.F.R. § 639.7(e) in connection with the Mount Morris, Pennsylvania Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

118.    On information and belief, Defendant did not notify the Pennsylvania agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the termination of the employment of Deaver and the Mount Morris Class Members.

### J.    <u>Damages</u>

119.    As a result of Defendant's violations of the WARN Act, Thompson and the Marshall Class Members have suffered damages. Thompson and the Marshall Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

120.    As a result of Defendant's violations of the WARN Act, Buck and the El Reno Class Members have suffered damages. Buck and the El Reno Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

121.    As a result of Defendant's violations of the WARN Act, Deaver and the Mount Morris Class Members have suffered damages. Deaver and the Mount Morris Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

### V.    <u>CLASS ACTION ALLEGATIONS</u>

122.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

123.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act 29 U.S.C. § 2104(a)(5).

A.     **Marshall Class Members**

124.     Thompson brings this action on behalf of himself and all other similarly situated employees. Thompson seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its Marshall, Texas single site of employment for its drilling operations who experienced an employment loss during the 30 or 90 day period from February 22, 2015 without 60 days' advance written notice required by the WARN Act." Plaintiff requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification and/or amended pleading to the extent discovery reveals that there is more than one single site of employment for Defendant's drilling operations.

125.     Thompson and the Marshall Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

126.     Thompsons's claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

127.     On information and belief, the Thompson Class Members exceed 50 in number, and joinder is therefore impracticable. The precise number of Thompson Class Members and their addresses are readily determinable from Defendant's records.

128.     There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

a. Whether the provisions of the WARN Act apply;

b. Whether Defendant's employees at the Marshall, Texas site of employment for Defendant's drilling operations experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;

c. Whether Defendant failed to provide the notices required by the WARN Act;

d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and

e.  The appropriate method to calculate damages under the WARN Act.

129.     The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

130.     A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

131.     Thompson is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the required written notice. He is therefore a member of the class. Thompson is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation.

Accordingly, Thompson is an adequate representative of the class and has the same interests as all of its members. Further, Thompson's claims are typical of the claims of all members of the class, and Thompson will fairly and adequately protect the interests of the absent members of the class. Thompson and his counsel do not have claims or interests that are adverse to the Marshall Class Members.

132.     Further, class action treatment of this lawsuit is authorized and appropriate under the WARN Act 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

### B.     El Reno Class Members

133.     Buck brings this action on behalf of himself and all other similarly situated employees. Buck seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its El Reno, Oklahoma single site of employment for its drilling operations who experienced an employment loss during the 30 or 90 day period from January 30, 2015 without 60 days' advance written notice required by the WARN Act." Plaintiff requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification and/or amended pleading to the extent discovery reveals that there is more than one single site of employment for Defendant's drilling operations.

134.     Buck and the El Reno Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

135.     Buck's claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

136.    On information and belief, the El Reno Class Members exceed 200 in number, and joinder is therefore impracticable. The precise number of El Reno Class Members and their addresses are readily determinable from Defendant's records.

137.    There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

> a. Whether the provisions of the WARN Act apply;
>
> b. Whether Defendant's employees at the El Reno, Oklahoma site of employment for Defendant's drilling operations experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;
>
> c. Whether Defendant failed to provide the notices required by the WARN Act;
>
> d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and
>
> e.  The appropriate method to calculate damages under the WARN Act.

138.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

139.    A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for

Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

140.    Buck is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the required written notice. He is therefore a member of the class. Buck is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Buck is an adequate representative of the class and has the same interests as all of its members. Further, Buck's claims are typical of the claims of all members of the class, and Buck will fairly and adequately protect the interests of the absent members of the class. Buck and his counsel do not have claims or interests that are adverse to the El Reno Class Members.

141.    Further, class action treatment of this lawsuit is authorized and appropriate under the WARN Act 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

### C.    <u>Mount Morris Class Members</u>

142.    Deaver brings this action on behalf of himself and all other similarly situated employees. Deaver seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its Mount Morris, Pennsylvania single site of employment for its drilling operations who experienced an employment loss during the 30 or 90 day period from February 2, 2015 without 60 days' advance written notice required by the WARN Act." Plaintiff requests the opportunity to expand, narrow or modify the class definition pursuant to a motion

for class certification and/or amended pleading to the extent discovery reveals that there is more than one single site of employment for Defendant's drilling operations.

143.     Deaver and the Mount Morris Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

144.     Deaver's claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

145.     On information and belief, the Mount Morris Class Members exceed 50 in number, and joinder is therefore impracticable. The precise number of Mount Morris Class Members and their addresses are readily determinable from Defendant's records.

146.     There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

> a. Whether the provisions of the WARN Act apply;
>
> b. Whether Defendant's employees at the Mount Morris, Pennsylvania site of employment for Defendant's drilling operations experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;
>
> c. Whether Defendant failed to provide the notices required by the WARN Act;
>
> d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and
>
> e. The appropriate method to calculate damages under the WARN Act.

147.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

148.    A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

149.    Deaver is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the required written notice. He is therefore a member of the class. Deaver is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Deaver is an adequate representative of the class and has the same interests as all of its members. Further, Deaver's claims are typical of the claims of all members of the class, and Deaver will fairly and adequately protect the interests of the absent members of the class. Deaver and his counsel do not have claims or interests that are adverse to the Mount Morris Class Members.

150.    Further, class action treatment of this lawsuit is authorized and appropriate under the WARN Act 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce

liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

## VI.   JURY DEMAND

151.   Plaintiffs demand a jury trial.

## VII.   DAMAGES AND PRAYER

152.   Plaintiffs asks that the Court issue a summons for Defendant to appear and answer, and that Plaintiffs and the Marshall, El Reno and Mount Morris Class Members be awarded a judgment against Defendant or order(s) from the Court for the following:

a.   An order certifying that the action(s) may be maintained as a class action/class actions under Federal Rule of Civil Procedure 23;

b.   Designation of Allen R. Vaught, Baron & Budd, P.C., as the representative of the Marshall Class, El Reno Class, Mount Morris Class, and as Class Counsel for each;

c.   All damages allowed by the WARN Act, including back pay and benefits as provided by 20 U.S.C. § 2104;

d.   Pre-judgment and post-judgment interest;

e.   Costs;

f.   Reasonable attorney's/attorneys' fees; and

g.   All other relief to which Plaintiffs and the Marshall, El Reno and Mount Morris Class Members are entitled.

Respectfully submitted,


By:   s/ Allen R. Vaught
      Allen R. Vaught
      Attorney-In-Charge
      TX Bar No. 24004966
      SD TX Bar No. 22757
      Baron & Budd, P.C.
      3102 Oak Lawn Avenue, Suite 1100
      Dallas, Texas  75219
      (214) 521-3605 – Telephone
      (214) 520-1181 – Facsimile
      avaught@baronbudd.com

      ATTORNEYS FOR PLAINTIFFS